# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT SOLOMON,**

    Plaintiff,

  v.                                                                Case No. 16-CV-229

**DAVID A. CLARKE, JR., and**
**MILWAUKEE COUNTY,**

    Defendants.

## DECISION AND ORDER DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT AND GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Robert Solomon brings this 42 U.S.C. § 1983 action against defendants David A. Clarke, Jr., and Milwaukee County alleging that their failure to enact adequate "keep separate" policies resulted in him being attacked by another inmate. Both parties have filed cross-motions for summary judgment. For the reasons I explain below, Solomon's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted.

Before discussing the parties' cross-motions however, I address Attorney Anne Kearney's motion to withdraw as Solomon's attorney. (Docket # 72.) As she explains in her motion, more than eighteen months ago, I recruited her to represent Solomon on a volunteer basis through the briefing of summary judgment. Attorney Kearney represented Solomon through the discovery phase and the briefing of summary judgment, which required her to file a motion on Solomon's behalf and to respond to defendants' motion.

Attorney Kearney has received no compensation for her extensive work; it has all been on a volunteer basis.

She explains that Solomon recently informed her that he no longer wants her to be his attorney. Because she has met all of the obligations of her recruitment, she asks that she be permitted to withdraw as counsel. I will grant her motion. I also express gratitude to Attorney Kearney. Her willingness to volunteer her time and talents to help someone who would not otherwise have had the assistance of counsel has benefitted Solomon, the court, and our system of justice.

## RELEVANT FACTS[1]

On May 9, 2013, Solomon, who was incarcerated at the Milwaukee County Jail, was attacked by inmate Jerome Brown and his friends in Solomon's cell. (Docket # 65 at ¶ 9, 10, 12.) Following the incident, Solomon and Brown were placed in the disciplinary housing unit and given "keep separate" designations. (*Id.* at ¶ 15, 16.) Keep separate is a custom and practice used throughout Milwaukee County law enforcement in order to keep certain suspects or inmates physically separate from one another. (Docket # 69 at 1.) The goals of the keep-separate system include separating inmates who pose safety risks to one another. (*Id.*)

According to defendants, on-the-spot, case-by-case reviews and keep-separate determinations are completed after every inmate altercation in the Jail, immediately after the inmates are placed in the disciplinary housing unit following the altercation. (*Id.* at 2.)

---

[1] I take the facts from "Plaintiff's Response to Defendant David A. Clarke, Jr.'s Statement of Proposed Material Facts in Support of Motion for Summary Judgment" (Docket # 65); "Defendant David A. Clarke, Jr.'s Response to Plaintiff's Statement of Proposed Material Facts" (Docket # 64); and "Defendants David A. Clarke, Jr. and Milwaukee County's Supplemental Brief in Support of their Motion for Summary Judgment" (Docket # 69). Unless otherwise noted, the facts are undisputed.

The supervisor who determines that the fighting inmates will be given keep-separate designations notifies all the lieutenants, first-line supervisors, and the classification unit of the new keep-separate designation for those inmates. (*Id.*) The supervisor—or someone delegated with the task—then marks the keep-separate designation on the inmates' locator cards, which are kept at the guard station in each housing unit. (*Id.*) Upon receiving the keep-separate notification from the supervisor, the classification unit also notes the keep-separate designation on the inmates' classification cards, which are kept with the classification unit. (*Id.* at 2-3.) With very limited exceptions, inmates are nearly always designated as keep-separates following an altercation. (*Id.* at 3.) Once inmates are designated as keep-separates, it is the Jail's intention that those inmates will be kept physically separate from one another at all times and will be kept in units that do not allow them to have any physical contact with one another. (*Id.*)

Then-Lieutenant Scott Sobek was the responding supervisor who likely sent out the keep-separate notification following Brown and Solomon's altercation. (*Id.*) Brown's inmate locator card included the names of eight inmates under the keep separate section. (Docket # 64 at ¶ 43.) Solomon was the second to last name listed in that section. (*Id.*) Solomon's inmate card included only Brown in the keep separate section. (*Id.* at ¶ 44.)

Solomon was moved back into the general population on the night of June 24, 2013. (*Id.* at ¶ 7.) Solomon did not know that Brown was in the same housing unit as him. (Docket # 65 at ¶ 20.) The next morning, at about 7 a.m., Solomon was seated at a table in the day room when Brown approached him from behind and struck him in the head with a food tray. (Docket # 64 at ¶ 13). Solomon did not fight back; instead, he moved to the guard

desk. (*Id.* at ¶ 19.) Solomon suffered a cut over his right eye, which required five sutures to close, an abrasion near his scalp, a swollen lip, and a bruise on his elbow. (*Id.* at ¶ 27, 28.)

Solomon was sent to disciplinary housing for thirty days as result of the incident. (*Id.* at ¶ 30.) Brown was arrested for battery of a prisoner. (*Id.* at ¶ 32.)

## DISCUSSION

### 1. Legal Framework

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, I take evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

*2. Analysis*

There is no dispute that Solomon was under the care and supervision of defendants when he was attacked and injured by another inmate. There is also no dispute that "jail officials have a duty[2] to protect pretrial detainees from violence at the hand of other inmates." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (internal quotations and citations omitted). However, to establish a failure to protect claim against the defendants under 42 U.S.C. § 1983, Solomon must prove that his injuries were caused by: "(1) an official policy . . . ; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (citations omitted). Where, as here, policies are required to remedy potentially dangerous circumstances, failure to make a policy will be actionable if policymakers demonstrate deliberate indifferent to the known or obvious consequences that would arise in the absence of a policy. *See id*.

Put another way, to prevail on his claims, Solomon must establish that defendants' policy (or failure to implement a policy) was the "moving force" behind his injury. *See Bd. of the Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *Glisson v. Ind. Dept. of Corr.*,

---

[2]Because Solomon's claim is based on an incident that occurred when he was a pretrial detainee, the claim arises under the Fourteenth Amendment, which is governed by the same standards as a claim arising under the Eighth Amendment. *See Smith v. Sangamon County Sheriff's Dept.*, 715 F.3d 188, 191 (7th Cir. 2013).

849 F.3d 372, 379 (7th Cir. 2017). If the alleged harm was caused by an agent or employee of the Jail, rather than by the policy (or the absence of a policy), defendants will not be held liable because § 1983 does not authorize vicarious liability under the common-law doctrine of *respondeat superior*. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-92 (1978).

Solomon first argues that defendants failed to implement a safety-driven policy or practice to address situations of inmate altercations. As support, Solomon highlights that there was no *written* policy. This argument fails. Defendants provide evidence that, while there was no written policy, the Jail has a practice of performing an "on-the-spot, case-by-case review[ ] and keep-separate determination[ ] . . . after every inmate altercation in the Jail." (Docket # 70 at 2.) Additionally, the supervisor who determines that the fighting inmates will be given keep-separate designations notifies all lieutenants, first-line supervisors and the classification unit of the new keep-separate designation for those inmates. (Docket #70 at 3.) The keep-separate designation is then noted on the inmates' classification cards. (*Id.*) In fact, the undisputed evidence demonstrates that this practice must have been followed after Solomon's altercation because Solomon and Brown were designated as "keep-separate" on their inmate locator cards. In the absence of evidence disputing the existence of the keep separate practice or that Solomon and Brown had been designated to be kept separate, the only reasonable conclusion a jury could reach is that defendants had in place a practice to address the danger faced by inmates who had previously engaged in an altercation.

Solomon next argues that, even if there was a practice in place, it was not consistently enforced or followed. This argument also fails. Defendants explain that, if inmates are designated as keep-separate after having been in an altercation (which they

6

nearly always are), "it is the Jail's intention that those inmates will be kept physically separate from one another at all times, and kept in units that do not allow them to have any physical contact with one another." (*Id.* at 3.) Solomon points to the fact that he and Brown were placed in the same housing unit together despite their keep-separate designation as evidence that the "Jail's intention" is not consistently enforced.

However, to prevail on that theory against defendants, Solomon would have to present evidence that defendants knew its employees were ignoring the practice and that it condoned that behavior. *See Palmer v. Marion City*, 327 F.3d 588, 596 (7th Cir. 2003). Solomon presents evidence only of his own experience. No jury could reasonably conclude from that single incident that defendants were on notice that their employees were ignoring the practice to keep inmates physically separate from one another after they had been given a keep-separate designation. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 408-09 (1997).

In short, Solomon fails to present any evidence from which a jury could reasonably conclude that defendants' policy/practice in connection with keeping inmates separate after an altercation was the moving force behind Brown's attack on Solomon. This, of course, is not intended to condone Brown's attack on Solomon. However, while it is likely that Jail staff may bear responsibility for assigning Solomon and Brown to the same housing unit despite a documented keep-separate designation, defendants cannot be held liable for the alleged misconduct of their employees. *Monell*, 436 U.S. at 691-92.

**NOW THEREFORE**, **IT IS HEREBY ORDERED** that Attorney Anne Kearney's motion to withdraw as counsel for plaintiff (Docket # 72) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket # 57) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket # 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. Judgment will be entered accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 14th day of March, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge